[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 26, 2005
THOMAS K. KAHN
CLERK

No. 04-15024
Non-Argument Calendar

_____

D. C. Docket No. 97-00079-CR-ODE-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID O. SPENCE, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 26, 2005)**

Before ANDERSON, CARNES, and MARCUS, Circuit Judges.

PER CURIAM:

# I. BACKGROUND

In June 1999, David O. Spence, Sr., was convicted of being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g) and 924(a), and was sentenced to 92 months' imprisonment, to be followed by 3 years' supervised release. According to the Pre-Sentence Investigation Report issued in relation to this conviction, Spence fired five shots into the bedroom of his former wife, Marcia Buford. After firing the shots, Spence pulled Buford onto the bed by her hair and held a gun to her temple, asking Buford whether "that got [her] attention." Spence then beat Buford in the face, causing Buford's front tooth to come out of her mouth and breaking two other teeth. After Buford went into the bathroom "to get some of the blood and teeth out of her mouth," Spence fired a round into the bathroom.

The conditions of Spence's supervised release included, inter alia, that he could not commit another federal, state, or local crime, and that could not leave the Northern District of Georgia without the permission of the court or his probation officer. The district court revoked Spence's supervised release on grounds that Spence had committed the felony of aggravated stalking (perpetrated against his ex-wife, Buford) and had left the jurisdiction without permission. The district court imposed 24 months' imprisonment. Spence appeals.

2

## II. DISCUSSION

### A. Spence's Evidentiary Challenges

On appeal, Spence argues that the district court erred by admitting the following hearsay testimony at his supervised release revocation hearing: (1) the allegations of Marcia Buford, Spence's former wife, relating to the aggravated stalking charge; (2) documents relating to his transfer from Paulding County, Georgia, to a nursing home in Macon, Georgia; and (3) an arrest warrant issued against him for escape. Spence maintains that the district court violated his Sixth Amendment right of confrontation by admitting this hearsay testimony. Spence notes that in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004), the Supreme Court held that, under the Confrontation Clause, out-of-court testimonial statements by a witness may not be admitted unless the declarant is unavailable, and the defendant previously had an opportunity to cross-examine him. Spence argues that we should hold that Crawford applies to a supervised release revocation hearing. Alternatively, Spence argues that we should determine whether the district court erred by applying the balancing test outlined in United States v. Frazier, 26 F.3d 110 (11th Cir. 1994) and Fed.R.Crim.P. 32.1(b)(2)(C).[1]

---

[1] Under Fed.R.Crim.P. 32.1(b)(2)(C), a judge must give a defendant at a parole revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear . . .

The applicability of evidentiary rules in supervised release revocation proceedings is a question of law subject to de novo review. United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994). In Crawford, the Supreme Court held that prior testimonial statements may be admitted only if the declarant is unavailable, and the defendant had an earlier opportunity to cross-examine the declarant. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. We have not addressed the issue of whether the Supreme Court's holding in Crawford applies to a supervised release revocation hearing. However,

> [a]lthough the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic. Defendants involved in revocation proceedings are entitled to certain minimal due process requirements. Among these minimal requirements is the right to confront and cross-examine adverse witnesses. Fed.R.Crim.P. 32.1, which applies to supervised release revocation, incorporates these same minimal due process requirements. Indeed, "[t]he same protections granted those facing revocation of parole are required for those facing the revocation of supervised release." Thus, in deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. In addition, the hearsay statement must be reliable.

Frazier, 26 F.3d at 114.

In Frazier, we found that although the district court had erred by failing to

---

."

determine the reliability of the hearsay testimony or conduct the required balancing test, the error was harmless because other properly considered evidence demonstrated that Frazier had breached the terms of his supervised release.  Id.

We need not determine whether Crawford applies to revocation hearings, nor whether admission of the challenged evidence violated the balancing test set forth in Frazier.  As in Frazier, any error was harmless.  Even assuming that the evidence challenged by Spence should not have been admitted, the error was harmless because other, uncontested evidence satisfied the elements of aggravated stalking and established that Spence left the jurisdiction without permission.[2]

Under O.C.G.A. 16-5-91(a):

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

The uncontested evidence related to stalking included the following:  (1) Detective Lafay Streetman, who was working with Spence's parole officer,

---

[2]    We note that elsewhere in his brief, Spence's counsel concedes that "Mr. Spence violated a protective order repeatedly."  Blue Brief at 25.

5

testified that Buford delivered various documents to Streetman that Buford had received through the mail, including legal documents that Spence had filed with the Superior Court of Paulding County and personal letters that either contained Spence's signature or were signed "your husband."[3] Several of those documents involved Spence's attempt to divorce his ex-wife, notwithstanding the fact that the two were already divorced. (2) Buford's permanent protective order was admitted without objection. That protective order stated that Spence was "enjoined and restrained from doing or attempting to do or threatening to do any act of injuring, molesting, maltreating, harassing, harming or abusing the petitioner in any manner and from approaching within 200 yards of the petitioner and from approaching within 200 yards of petitioner's residence or place of employment." Revocation Hearing at 47. (3) Spence admitted that he had served Buford with legal documents. (4) The detective testified that Spence had told her he was trying to "resolve" his marriage with Buford. (5) The detective testified that she believed that Buford viewed the mailings as a form of harassment , and that Buford was "taking all this in" and appeared to be "excessively afraid."[4] Even assuming that

_____

[3] Streetman testified that she is the lead domestic violence investigator at the Paulding County Sheriff's Department.

[4] Detective Streetman also testified that Buford told her that Buford was so afraid that she had missed work, stayed with her parents, and had begun seeing a doctor who could prescribe medication for her anxiety.

all the evidence whose admissibility Spence challenges is inadmissible in a parole

revocation hearing, the unchallenged evidence is sufficient to justify the district

court's finding that Spence had committed the felony of aggravated stalking.

The court was also justified in finding that Spence had violated the terms of

his release by leaving the Northern District of Georgia without authorization from

the court or his probation officer. Although Spence challenges the admissibility of

certain documents relating to Spence's transfer from Paulding County custody to a

nursing home in Georgia, and to the arrest warrant issued after Spence left the

nursing home, Spence does not dispute that he left the nursing home without

authorization.[5] The probation officer's petition for revocation of supervised

release alleged that Spence was guilty of the crime of escape. As the district court

pointed out, regardless of whether Spence is guilty of the crime of escape, the

evidence above is sufficient to justify the finding that Spence left the jurisdiction

without permission of the court or his parole officer.

B. Spence's PROTECT Act Challenges

Spence also argues that his sentence upon revocation of his supervised

---

[5]      Rather, without pointing to any corroborating evidence, Spence claims that he left
in order to avoid being subject to medical procedures to which he did not consent. Spence does
not dispute the fact that he was found and arrested in Camden County, Georgia, which is outside
the jurisdiction. The district court judge found Spence's account of why he left the nursing home
not to be credible. Revocation Hearing at 97.

release did not comply with the requirements of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act, (the "PROTECT Act") Pub.L. No. 108-21, 117 Sta. 650 (2003). Specifically, Spence maintains that the district court erred by (1) imposing a sentence above the sentencing range set forth in U.S.S.G. § 7B1.4, which Spence argues was made mandatory by the PROTECT Act, and (2) failing to include a written explanation for its decision to impose the sentence.

Spence preserved his challenge to the sentence outside of the sentencing range described in U.S.S.G. § 7B1.4, but did not object to the district court's failure to provide a written statement of its reasons for doing so. Therefore, we review this issue for plain error. See United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000).[6] We have "held that where neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it [or have unanimously held against the appellant], there can be no plain error in regard to that issue." Aguillard, 217 F.3d at 1321, citing United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999).

---

[6] To establish plain error, Spence must persuade us that (1) there was an error, (2) that was plain, (3) that affected his substantial rights, and (4) that, if left uncorrected, would seriously affect the fairness, integrity or public reputation of a judicial proceeding. See, e.g. United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999).

Spence's argument that the sentencing range described in the U.S.S.G. §7B1.4 policy statement is now mandatory is based upon the following provisions of the statute. Section 3553(b)(1) of Title 18 provides in relevant part:

> The court shall impose a sentence of the kind, and within the range referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.

18 U.S.C. §3553(b)(1). The referenced subsection (a)(4) includes the following provision regarding parole revocations:

> The court, in determining the particular sentence to be imposed, shall consider –
>
> . . .
>
> (B) In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission.

18 U.S.C. §3553(a)(4). In addition, Spence relies upon 18 U.S.C. §3742(e), which requires that an appellate court review departures from the Guideline range _de novo_. Finally, Spence relies upon 18 U.S.C. §3742(f)(2) which provides that an appellate court should set aside and remand a sentence if it is outside the "applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment." The "required statement of reasons in the order of judgment and commitment" refers to 18

U.S.C. §3553(c)(2) which provides in relevant part as follows:

> Statement of Reasons for Imposing a Sentence – The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence –
> . . .
>
> (2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment ...

18 U.S.C. §3553(c)(2).

As is readily apparent from a close review of the foregoing statutory provisions, the crucial provision upon which Spence relies to support his argument that the policy ranges are mandatory is §3553(b)(1). In other words, only in §3553(b)(1) is there any indication at all of a mandatory obligation.

For two reasons, we readily conclude that there is no merit in Spence's argument that the sentencing ranges recommended in the Chapter 7 policy statements are mandatory. First, the crucial language of §3553(b)(1) was not changed by the PROTECT Act, and our pre-PROTECT Act case law was well established that such policy ranges were merely advisory. In United States v. Hofierka, 83 F.3d 357 (11th Cir. 1996), we rejected an argument that the then applicable §3553(b) imposed a mandatory obligation upon the sentencing judge to impose a sentence within the range specified in Chapter 7 for a violation of

10

probation or supervised release. The <u>Hofierka</u> opinion included a quotation of the then applicable §3553(a)(4) and of the then applicable §3553(b). So far as is relevant to the question of whether or not there is a mandatory obligation upon a sentencing judge to impose a sentence within the ranges specified in Chapter 7 for violation of probation or supervised release, there is absolutely no difference in the language of the statute applied in <u>Hofierka</u> as compared to the currently applicable provisions of the statute. Thus, Spence's argument is wholly without merit.

A second reason for rejecting Spence's argument that the sentencing ranges recommended in the Chapter 7 policy statements are mandatory is based upon <u>United States v. Booker</u>, ___ U.S. ___, 125 S.Ct. 738, 756-57 (2005). In that case, the Court "severed and excised" §3553(b)(1), thus eliminating the statutory language upon which Spence relies to support his argument. Pursuant to <u>Booker</u>, even the Guidelines promulgated by the Sentencing Commission are merely advisory, and, of course, the sentencing ranges recommended in the Chapter 7 policy statements remain merely advisory as well.

Having disposed of Spence's argument that the sentencing ranges

recommended by the Chapter 7 policy statements are mandatory[7], we turn next to his argument that the sentencing judge failed to state with specificity in the written order of judgment and commitment the reasons for departing from the recommended sentencing range. In this regard, Spence relies upon §3553(b)(1) and §3553(c)(2).

As noted, the former section has now been "severed and excised," and therefore cannot support Spence's argument. However, §3553(c)(2) remains, and we must address Spence's argument. As noted above, Spence did not object in the district court to the failure to provide such a written statement, and therefore we review only for plain error. We readily conclude that Spence cannot satisfy the plain error standard. In analyzing the currently applicable statutory language, the Eighth Circuit has squarely held that the Chapter 7 sentencing ranges for violation of supervised release remain merely advisory, that a sentence above that advisory range is not an upward departure contemplated by the statutory language, and that the requirement of specific findings justifying departures does not apply to a sentence above such an advisory range. United States v. White Face, 383 F.3d

_____

[7] Spence's other arguments challenging the sentence are rejected without need for discussion. For example, his double counting argument is rejected because we conclude there was no double counting. His argument for de novo review is based upon § 3742(e), which was also "severed and excised" by Booker; his challenge to the sentence is due to be affirmed under any conceivable standard.

733, 737-39 (8th Cir. 2004); <u>United States v. Martin</u>, 371 F.3d 446, 449 (8th Cir. 2004). Neither this Court nor the Supreme Court has squarely addressed the issue, although we note that the rationale of our <u>Hofierka</u> decision would point toward a ruling similar to that of the Eighth Circuit. However, we need not resolve the issue in this case because Spence cannot establish plain error. Even if there were error, which we doubt, it is not plain or obvious. We also readily conclude that Spence could not satisfy either the third or fourth prongs of the plain error analysis.[8]

## III. CONCLUSION

Upon review of the record on appeal and upon consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm the district court's revocation of Spence's supervised release and the sentence.

**AFFIRMED.**

---

[8] We note that the sentencing judge amply explained the reasons for the sentence and merely failed to include same in the written order of judgment and commitment.

13